John H. Doerr, J.
This is a motion for an order pursuant to CPLR 3212 in which each party is seeking summary judgment.
Plaintiff Watergate II Apartments (Watergate) is a limited partnership whose general partner is Niagara Watergate, Inc., a corporation duly organized and existing under New York State law and having a place of business in Buffalo, New York. Defendant Buffalo Sewer Authority (Authority) is a public benefit corporation organized pursuant to title 5 of article 7 of chapter 870 of the Laws of 1939 (now Public Authorities Law, § 1175 et seq.) and having a place of business in the City of Buffalo.
In December, 1971, Watergate entered into an agreement for tax abatement with the City of Buffalo, authorized by its Common Council, which provided certain limitations upon taxes to be assessed against real property owned by Watergate. This tax abatement agreement was part of a loan agreement entered into between Watergate and an agency of the United States. One provision of the loan agreement provides for acceleration of the loan agreement and first mortgage covering the real property should Watergate default in payment of any taxes.
*134 Upon completion of the above agreements, Watergate constructed twin apartment buildings upon the said real property.
Receipts submitted by Watergate establish it has been billed for several charges by the City of Buffalo and the Authority in regard to the apartments. Such charges include:
(1) City of Buffalo real property tax and Buffalo Sewer Authority sewer rent based on the assessed value of the nontax exempt property.
(2) City of Buffalo water charges and Buffalo Sewer Authority sewer charges based upon the quantity of water used as measured by meters of the Division of Water.
(The above sewer rent and sewer charges appear respectively on City of Buffalo real property tax and water charge bills as a billing convenience to the Authority, which receives the sewer revenues.)
(3) Buffalo Sewer Authority sewer rent based on the assessed value of the tax exempt property multiplied by a standard factor. (Emphasis supplied.)
Based on these receipts, there can be no dispute Watergate paid the charges listed in (1) and (2) above. However, it has not and refuses to pay the sewer rent described in (3) above. As a result of this nonpayment, the Authority served Watergate’s mortgagee with a statement claimed to be accruing monthly interest and which the Authority maintains constitutes liens against the property.
After being notified of the Authority’s statement, Watergate commenced an action on May 30, 1975 against the Authority to declare the sewer rent an unlawful tax and to enjoin its enforcement against Watergate. By its answer, the Authority asserted several affirmative defenses and a counterclaim based on Watergate’s failure to pay the sewer rent. On November 5, 1975 Watergate moved for summary judgment based on the allegations in its complaint and on November 21, 1975, the Authority similarly moved for summary judgment on its counterclaim.
Watergate maintains the sewer rent is an unlawfully imposed tax based on assessed valuation of its property. Alternatively Watergate claims if the sewer rent is a lawful tax, then the agreement with the City of Buffalo exempts Watergate from payment of same.
The Authority takes the position the sewer rent is not a tax, *135 but rather is a charge based on specific sewerage services rendered to Watergate. Further, it submits the sewer rent is not subject to the abatement agreement.
The central issues presented for determination then are (1) whether the Authority’s sewer rent is a tax based on property assessment or a charge based on actual use of the facilities and (2) whether the sewer rent was lawfully imposed on Watergate under the circumstances herein. Guidelines for determining both the nature and legality of the Authority’s sewer rents are found in relevant sections of the General Municipal Law, the Public Authorities Law and in the authoritative case of Robertson v Zimmermann (268 NY 52).
Section 450 et seq., of the General Municipal Law, the New York "Sewer Rent Law”, sets forth State-wide guidelines for imposing sewer rents. In relevant part section 451 of the General Municipal Law provides:
"§ 451. Definitions * * •
(I) 'Sewer rents.’ A scale of annual charges established and imposed in a city * * * for the use of a sewer system * * * Such charges may be based on either (a) the consumption of water on the premises * * * (b) the number and kind of plumbing ñxtures on the premises * * * (c) the number of persons served on the premises * * * (d) the volume and character of sewage * * * (e) upon any other equitable basis determined by the local legislative body, including but not limited to any of the foregoing.” (Emphasis added.)
More specifically, section 1175 et seq. of the Public Authorities Law entitled "The Buffalo Sewer Authority Act” (L 1939, ch 870, art 7, tit 5) both created the Buffalo Authority and delineated its powers and duties. In relevant part, the act provides:
"§ 1178 Powers of the authority
The authority shall have the power:
* * *
(II) To fix and collect rates, rentals and other charges for services rendered by the authority
"§ 1180 Sewer rents
* * * the Authority is authorized to establish a schedule of rates, rentals or charges, to be called 'sewer rents’ * * * Such sewer rents may be based upon either the consumption of water on the premises connected with such facilities -* * * the number and kind of plumbing ñxtures connected with such *136 facilities, the number of persons served by such facilities, or may be determined by the authority on any other equitable basis. ” (Emphasis supplied.)
Thus, the act empowers the Authority to impose sewer rents and sets forth the bases for establishing same.
In Robertson v Zimmermann (268 NY 52, supra) the Court of Appeals ruled on the constitutionality and scope of the Buffalo Sewer Authority Act (Public Authorities Law, § 1175 et seq.). Justice Hubbs upheld the constitutionality of the act against a local taxpayer’s challenge and set forth the constitutionally permissible interpretation of the provisions.
Referring specifically to the sewer rents now in question, the court held (p 57) the Authority was lawfully given complete jurisdiction: "to establish sewer rents to be collected from all real property served by its facilities. Such sewer rents are to constitute a lien upon the real property served * * * which lien may be foreclosed by action in the same manner as a tax lien.” Thus, the Authority’s power to impose sewer rents upon all property serviced was upheld.
The court further defined the constitutionally permissible basis for charging such sewer rents by holding (p 64): "The act provides that the Authority is permitted to charge only on a basis of service rendered. Charges based upon services rendered by an authority do not constitute a tax, and the fact that a lien for unpaid charges is permitted against the property served does not affect the validity of the act.” (Emphasis supplied.) Clearly, the Authority’s power to impose sewer rents was upheld so long as such rents were not a tax but rather a charge based solely on services actually rendered. Conversely, sewer rents computed on the basis of assessed property valuation would be per se unlawful. (See, also, Silkman v Board of Water Comrs. of City of Yonkers, 152 NY 327.)
Another recent decision similarly distinguished taxes from charges based upon services actually rendered and upheld only the latter. In Rockhill Sewerage Disposal Corp. v Town of Thompson (27 AD2d 626), Justice Brink rejected a constitutional challenge to annul sewage charges imposed by a sewage disposal company pursuant to section 451 of the General Municipal Law. It should be noted the use-related bases for charging sewer rents contained in section 451 of the General Municipal Law are nearly identical to those in the Buffalo Sewer Authority Act (Public Authorities Law, § 1180).
*137 In holding such charges did not deprive the city of property without due process of law, the court stated (p 627) that section 451: "limit[s] the authority of municipalities * * * to fix sewer rents on the basis of actual use of the sewerage system by property owners. Although section 451 lists several methods of fixing rentals for the use of sewerage systems * * * and permits a * * * charge on any other equitable basis, the statute generally limits the method employed to the use of the sewerage system.” (Emphasis added.) Clearly the interpretation that only use-related sewer rents are lawful under section 451 is consistent with the construction given section 1180 of the Public Authorities Law in Robertson v Zimmermann (supra).
In State Univ. of N. Y. v Patterson (42 AD2d 328,329) the court similarly applied the Robertson principle that charges based on assessment of property are taxes and held a water charge based on equipment, rather than on consumption, was an illegal tax. In reviewing the relevant law, the court wrote (p 329): "It has been consistently held that the distinguishing feature between a water rent and a water tax is whether the charge is based upon the amount of water consumed or * * * upon the dimensions, value or use of a building”.
In sum, it is well established a sewer rent based on actual use of services is lawful, whereas a tax based on assessed valuation of property is not. The question remains whether the sewer rent herein challenged is a lawful use-related charge or an unlawful tax. An examination of the amended "Schedule of Sewer Rents and Other Charges” issued by the Buffalo Sewer Authority to be effective July 1, 1974 provides the answer to this critical question.
The schedule of sewer rents sets forth the three methods used together to compute total sewer rents. First, paragraph I (a) provides for collection of a flat sum from all taxable real property based on its assessed value: "$4,202,500.00 shall be collected from all taxable real property in the City of Buffalo by apportioning the said amount upon such taxable property within the City of Buffalo as the same is set down on the last completed annual assessment rolls of the City.”
Second, paragraph I (b) provides for collection of additional sewer rent based on actual use of water: "In the event a * * * building * * * is a user of water supplied by the Division of Water of the City of Buffalo * * * and the quantity of water used is measured by a water meter * * * the quantity of *138 water used, as measured by said meter, shall be used to determine the sewer charge or rental.”
Third, paragraph III (k) requires an additional sewer rent be collected from partially tax-exempt property based solely on the assessed value of the nontaxable portion of the property: "Parcels of real estate granted partial tax exemption pursuant to * * * the Private Housing Finance Law * * * shall be charged an additional sewer rent determined by the amount of the exemption multiplied by the sewer rental rate per $1,000 of assessed valuation charged against taxable real property, pursuant to para. I (a) of this schedule.”
As previously indicated, Watergate has paid and does not contest the first and second sewer rents, but challenges the legality of the third sewer rent alone. Based on the language of the sewer rent schedule quoted above, there can be no doubt the portion of the sewer rent now in question is based solely on assessed valuation of property. As such, paragraph III (k) constitutes a tax and not a charge based on services actually rendered to Watergate by the Authority. Imposition of this tax is consequently illegal and beyond the constitutionally limited powers of the Authority. (Robertson v Zimmerman, 268 NY 52, supra.)
Because I find the sewer rent herein challenged an illegal tax, it is unnecessary to determine whether it is subject to the tax abatement agreement negotiated between Watergate and the City of Buffalo.
The Authority raises several procedural objections to maintenance of this suit by Watergate. For the reasons set forth below, none can be sustained and Watergate has a legal right to bring the action herein.
First, the Authority maintains suit may not be brought against a public authority. Although admittedly Watergate could not sue the Authority pursuant to section 51 of the General Municipal Law, the present action is brought under subdivision 4 of section 1178 of the Public Authorities Law which provides the Buffalo Sewer Authority shall have power "to sue and be sued”. Clearly section 1178 authorizes the present suit.
Second, the Authority asserts no justiciable controversy exists and Watergate lacks standing to sue since it has no legally protectible interest. Watergate clearly is a person directly aggrieved by the Authority’s imposition of a void and *139 unlawful tax. Under those circumstances, Watergate has standing to sue and has asserted a justiciable controversy.
Third, it is claimed an action for declaratory judgment is improper and that an article 78 proceeding or an action for an injunction would be proper. In its complaint Watergate clearly requested both injunctive and declaratory relief. Further, it is well settled an action for declaratory relief, rather than an article 78 proceeding, is the proper action in a suit challenging the jurisdiction of a body to tax. (Buffalo Hebrew Christian Mission v City of Syracuse, 33 AD2d 152.) Consequently, Watergate has properly brought this suit to challenge the imposition of sewer rent as an action for declaratory and injunctive relief.
Fourth, the Authority maintains Watergate failed to exhaust its statutory and administrative remedies as it made no timely objection when the sewer rent schedule was first proposed as required by section 1180 of the Public Authorities Law. It is well settled, however, that exclusive remedies for reviewing proposed tax assessments do not bar judicial proceedings challenging the validity of such taxes. (Matter of First Nat. City Bank v City of N. Y. Fin. Administration, 36 NY2d 87.)
In conclusion, it is hereby determined Watergate had a legal right to bring this action challenging the imposition of certain sewer rents by the Buffalo Sewer Authority. Further, as a matter of law, it is determined the sewer rent in question based on the assessed value of Watergate’s tax-exempt property constitutes an illegal tax. As such, it is not subject to the tax abatement agreement negotiated between the City of Buffalo and Watergate.
Accordingly, Watergate’s motion for summary judgment pursuant to CPLR 3212 is granted and the Authority’s motion for summary judgment is denied.