Meadow E. Assoc. LP v Village of Potsdam (2022 NY Slip Op 07274)

Meadow E. Assoc. LP v Village of Potsdam

2022 NY Slip Op 07274

Decided on December 22, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

533934
[*1]Meadow East Associates LP et al., Appellants,
v
Village of Potsdam et al., Respondents.

Calendar Date:November 16, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Reynolds Fitzgerald and McShan, JJ.

Tabner, Ryan & Keniry, LLP, Albany (William F. Ryan Jr. of counsel) and Antonucci Law Firm LLP, Watertown (David P. Antonucci of counsel), for appellants.
Law Firm of Frank W. Miller, PLLC, East Syracuse (Giancarlo Facciponte of counsel), for respondents.

McShan, J.
Appeal from a judgment of the Supreme Court (Mary M. Farley, J.), entered August 3, 2021 in St. Lawrence County, which, among other things, declared that Village of Potsdam Local Laws Nos. 6-2017 and 7-2017 are constitutional.
Plaintiffs own various residential rental properties in the Village of Potsdam, St. Lawrence County. As relevant here, defendant Village of Potsdam provides sewer and water utility services to the properties and plaintiffs are responsible for the payments for these utility services. At issue in this proceeding is the enactment of Village of Potsdam Local Laws Nos. 6-2017 and 7-2017 (hereinafter collectively referred to as the Local Laws) which revised the manner in which the Village assessed rates for water and sewer rents. Prior to the enactment of the subject Local Laws in 2018, the Village water and sewer rates were assessed primarily on customer usage, which resulted in insufficient revenue being generated for fixed costs related to the operation and maintenance of the water and sewer systems. The resulting budget shortfalls prompted the Village to commission a study of its water and sewer rates, for which it retained the Development Authority of the North Country (hereinafter DANC) — an agency that contracts with municipalities to study, analyze and make recommendations for the delivery of essential services.
Following the submission of a report from DANC and a public hearing, the Village enacted the laws, which, in sum and substance, established a scale of annual charges for sewer and water rents on properties within the Village, including those owned by plaintiffs. The annual charges consisted of three components including, as relevant here, a newly implemented billing system that assigns the number of billing units per customer based on "Equivalent Dwelling Units" (hereinafter EDU). Under the Local Laws, EDUs were assigned based upon the category of property subject to the laws. The Local Laws assigned different EDU values to residential properties based upon a comparison to water and sewer usage generated by a single-family home. Relevant to this appeal, apartment buildings were assigned an EDU value of one per apartment unit, similar to a single-family home.
Plaintiffs thereafter commenced the instant action as a combined proceeding pursuant to CPLR article 78 and an action for declaratory judgment (see CPLR 3001). Plaintiffs sought a declaration that the Local Laws are discriminatory and unconstitutional. Following joinder of issue and the submission of a reply affidavit from plaintiffs, Supreme Court, having received no requests from the parties for discovery or oral argument, decided the matter on the parties' submissions. Supreme Court determined that plaintiffs' claims challenging the constitutionality of the Local Laws could not be brought under a CPLR article 78 challenge and dismissed that part of the proceeding. Further, the court declared that the Local Laws satisfy the Equal Protection and Due Process [*2]Clauses of the US and NY Constitutions and dismissed the remainder of the action. Plaintiffs appeal.
On this appeal, plaintiffs limit their challenge to that part of Supreme Court's judgment dismissing their constitutional challenges to the Local Laws.[FN1] "A local law is entitled to an exceedingly strong presumption of constitutionality that may be rebutted only by establishing its unconstitutionality beyond a reasonable doubt" (Matter of Gabrielli v Town of New Paltz, 116 AD3d 1315, 1318-1319 [3d Dept 2014] [internal quotation marks and citations omitted]). "For purposes of equal protection review, a legislative classification, such as the one at bar, that neither makes distinctions on the basis of a suspect class nor impairs a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate state purpose" (Korotun v Incorporated Vil. of Bayville, 26 AD3d 311, 313 [2d Dept 2006] [citations omitted], lv denied 7 NY3d 701 [2006]; see New York State United Teachers v State of New York, 140 AD3d 90, 97 [3d Dept 2016], appeal dismissed 28 NY3d 978 [2016], lv denied 28 NY3d 915 [2017]). "In determining whether a reasonable objective is promoted by the classification, the courts are not bound by the stated purpose of the [legislation]. Instead, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" (Korotun v Incorporated Vil. of Bayville, 26 AD3d at 313 [internal quotation marks and citations omitted]; see Matter of Archer v Town of N. Greenbush, 80 AD2d 361, 363 [3d Dept 1981]).
At the outset, plaintiffs make clear that their contentions do not extend to whether the Village was authorized to enact a billing model for its water and sewer services that assigned EDU values to different properties, nor do they contend that the Local Laws exceed the statutory authority for enactment pursuant to General Municipal Law § 452 or Village Law § 11-1118. Rather, plaintiffs' contentions are limited to the manner in which the Village assigns EDU values to apartments as opposed to other property types. In this respect, plaintiffs contend that the Local Laws improperly classify apartments in the same manner as single-family homes rather than other types of properties that bear greater similarity to their size and character, such as various commercial properties, including hotels and motels. Relatedly, plaintiffs contend that the rates are irrational as they improperly classify properties based upon their assumed water usage rather than assessing a proportionate charge that reflects their actual usage. We disagree.
The record reveals that DANC presented the Village with four scenarios for revamping its water and sewer rates, and the Village ultimately elected the option that "calculates Apartment EDU's based on the number of units in the apartment and assigns water/sewer EDU rates based [*3]on 50% fixed costs and 50% variable cost." As part of its recommendation to the Village, DANC explained in its report that the EDU billing model's objective was "to assign a representative EDU to each property class code to evenly distribute the fixed [water and sewer] cost between users." DANC noted that "[t]he typical single-family residence water consumption used in the planning stages of most water and sewer systems is 150 or 200 [gallons per day]." However, rather than using a figure within that range, DANC elected to use 120 gallons per day as a baseline standard for consumption per EDU in the Village "due to the average single[-]family home in the Village currently using 113 [gallons per day]." Noting the foregoing analysis, the DANC report recommended that the Village assign one EDU for a single-family home and further recommended that the prior year consumption would be used to determine EDUs for commercial properties, such as hotels and motels. As explained by the affidavit of Carrie Tuttle, DANC's chief operating officer, "commercial properties have highly variable usage and a set number of EDUs cannot be established," whereas, the difference between apartments and single-family homes is minimal, as both types of residential units share similar variances in composition and levels of occupancy. Tuttle also noted that the classification of apartments and single-family homes together was typical for other municipalities that had utilized an EDU billing model.
We find that the foregoing facts establish that the Village's decision to classify apartments similarly to other residential properties is rational. "Where there is a claim of a violation of equal protection principles, great deference is given to legislatures in classification and the burden is on those asserting a constitutional infirmity to demonstrate the absence of any conceivable state of facts which would support the classification" (Matter of Archer v Town of N. Greenbush, 80 AD2d at 363 [citation omitted]). To this end, the Village was empowered to act in a manner that, "in its judgment, would best serve its economic and public policy goals, including economic differentiations among its charges so long as there is not involved any of the invidious discriminations condemned by statute or Constitution, or some utterly arbitrary discrimination not related to economic considerations or some accepted public goal" (Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, 497 [1985] [internal quotation marks and citation omitted]). If "the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality" (id. at 495 [internal quotation marks and citations omitted]). We have previously made clear that "a water supplier may properly distinguish between users based upon usage and cost of delivery so long as rates are uniform for all members of a class[*4]" (Matter of Rezek v Village of Richmondville, 24 AD3d 1169, 1170 [3d Dept 2005] [internal quotation marks, brackets and citation omitted]; see YNGH, LLC v Village of Gouverneur, 121 AD3d 1266, 1269 [3d Dept 2014]). Thus, the simple fact that apartments may bear some similarity to other properties outside of its classification does not render the manner in which the Village made those classifications irrational, so long as some connection to the benefits received exists (see Matter of Prometheus Realty Corp. v New York City Water Bd., 30 NY3d 639, 646 [2017]; Elmwood-Utica Houses, Inc. v Buffalo Sewer Auth., 65 NY2d at 497; Town Bd. of Town of Poughkeepsie v City of Poughkeepsie, 22 AD2d 270, 273 [2d Dept 1964]). In this respect, we agree with the conclusion of Supreme Court that an apartment building's character as a commercial entity does not abrogate the fact that it is, in essence, a collection of residential spaces. In sum, we give "defer[ence] to legislative determinations as to the desirability of particular statutory discriminations" (Big Apple Ice Cream v City of New York, 7 AD3d 282, 284 [1st Dept 2004] [internal quotation marks and citations omitted]), and our review of the record satisfies us that the Village thoroughly considered the distinctions between the different property types in assessing how to best classify them (see Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 285 AD2d 953, 956-957 [3d Dept 2001]).
For similar reasons, we are unpersuaded that the discrepancies in assumed water usage between single-family homes and apartments renders the Village's classifications irrational. "The law requires a rational basis for a legislative classification, rather than mathematical certainty" (Arcuri v Village of Remsen, 202 AD2d 991, 992 [4th Dept 1994]; see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 59 [1978]). The simple fact that apartments generally utilize less water than single-family homes is not dispositive as to whether the Local Laws have a rational basis (see Matter of Hull v Town of Warrensburg, 207 AD2d 37, 40 [3d Dept 1994]; Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 285 AD2d at 957; Arcuri v Village of Remsen, 202 AD2d at 992). Such an argument fails to consider that, for purposes of assessing rationality, single-family homes may still properly fall within the same class although there are discrepancies in their size and usage. In this regard, "[a]lthough a rational underpinning for the charges levied must be found," the discrepancies such as those that exist in this case may be tolerated (Matter of Hull v Town of Warrensburg, 207 AD2d at 39-40 [internal quotation marks and citation omitted]; see YNGH, LLC v Village of Gouverneur, 121 AD3d at 1269; Matter of Rezek v Village of Richmondville, 24 AD3d at 1170).
Plaintiffs' claim that the Local Laws are unconstitutionally vague is unpreserved, as they raise this contention for the first time on this appeal and did not include it in [*5]their complaint/petition (see Matter of Northwood Sch., Inc. v Joint Zoning Bd. of Appeals for the Town of N. Elba & Vil. of Lake Placid, 171 AD3d 1292, 1295 [3d Dept 2019]). Further, we reject plaintiffs' contention that a trial is necessary to resolve the constitutional issues they raised in this action. Supreme Court noted that the parties had not requested discovery or oral argument and there is no evidence to the contrary in the record. Plaintiff cannot be heard now to complain that a trial is necessary on disputed issues of fact that it fails to identify with any specificity and, more importantly, failed to raise before Supreme Court (see generally Neuman v City of New York, 186 AD3d 1523, 1525-1527 [2d Dept 2020]). To the extent that plaintiffs' remaining contentions are not directly addressed herein, we have reviewed them and determined that they lack merit.
Egan Jr., J.P., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: We note that plaintiffs dedicate a portion of their brief to their contention that this action seeking a declaratory judgment was not time-barred. However, Supreme Court did not directly decide the merits of that contention and defendants have not appealed that aspect of the court's decision. Accordingly, we need not address that issue on this appeal (see Matter of Matarazzo v Safir, 261 AD2d 142, 143 [1st Dept 1999]).